**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 13-21758-CIV-MORENO

**KRISTIN "M.K." DUCOTE,**
**CHAPMAN DUCOTE,** and
**WAR CHEST PUBLISHING, LLC,**

           Plaintiffs,

   v.

**KICKSTARTER, INC.,**

          Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**
**OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

      Defendant Kickstarter, Inc. ("Kickstarter"), by its attorneys and pursuant to

Fed. R. Civ. P. 12(b)(3), moves to dismiss Plaintiffs' Complaint, with prejudice, for improper

venue.  In the alternative, Kickstarter moves that this Court transfer this action to the United

States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  If

the Court reaches the merits of Plaintiffs' claims, Kickstarter moves to dismiss the Complaint

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

---

[1] Kickstarter's Terms of Use [D.E. 1-3, pp. 11-21], discussed in detail below, expressly provide:
"You agree that the Company and its Services are deemed a passive website that does not give rise to personal
jurisdiction over Kickstarter . . . in any jurisdiction other than the State of New York." *Id.*, p. 19.  However, in light
of the New York forum-selection clause contained in the Terms of Use, and in the interests of efficiency and judicial
economy, and to avoid unnecessary costs and delay, this motion seeks dismissal of this action for improper venue,
rather than for lack of personal jurisdiction.

## MEMORANDUM OF LAW

### I.        INTRODUCTION

Plaintiffs Kristin "M.K." Ducote ("MK"), Chapman Ducote ("Ducote"), and War Chest Publishing, LLC ("War Chest") (collectively, "Plaintiffs") bring this action to recover alleged damages for purported lost sales of the fictional novel Naked Paddock.  Plaintiffs allege that they registered with Kickstarter, a New York City-based online platform, to raise funds for publication of the novel, and that Kickstarter improperly suspended Plaintiffs' fundraising campaign.  Plaintiffs assert purported claims against Kickstarter for breach of contract (Count I), fraudulent inducement (Count II), and unjust enrichment (Count III).

Plaintiffs allege, multiple times, that before commencing their fundraising campaign, they accepted and agreed to Kickstarter's Terms of Use.  Those Terms of Use, attached to the Complaint, unambiguously provide that Kickstarter may suspend a campaign at any time, and for any reason.  The Terms of Use further provide that no action should be taken in reliance on having any project posted on the Kickstarter website, and that Kickstarter does not guarantee that any content will continue to be made available through the Kickstarter service. The Terms of Use further contain a forum-selection clause mandating New York County, New York as the exclusive forum for any dispute.

As such, this lawsuit should be dismissed for improper venue, or, in the alternative, transferred to the U.S. District Court for the Southern District of New York.  Should the Court reach the merits of Plaintiffs' claims, the claims are controlled and negated by the Terms of Use, and should be dismissed for failure to state a claim upon which relief can be granted.

4818-1570-7412.3

## II.  **FACTUAL BACKGROUND**

The following facts, alleged in the Complaint, and stated in the attached

Declaration of Jared Cohen (filed solely in connection with the venue issue), are germane to this

Motion.

### A.  **The Parties**

MK is the author of Naked Paddock.  Complaint, ¶ 8.  MK and Ducote own War

Chest, the publisher of the novel.  *Id.*, ¶¶ 2-3, 8.  Each Plaintiff is a resident of Miami-Dade

County.  *Id.*, ¶¶ 2-4.

Kickstarter is a New York City-based funding platform for creative projects such

as Naked Paddock to raise funds.  *See id.*, ¶¶ 5, 9.

### B.  **The Kickstarter Service**

Kickstarter is a website that allows certain users of the Kickstarter service

("Project Creators") to run campaigns to fund their creative projects by offering rewards to raise

money from other users ("Backers").  (Declaration of Jared Cohen, attached as Exhibit 1, ¶ 4).

The Project Creators (for example, filmmakers, musicians, artists, and designers) alone have

responsibility for their projects.  *Id.*, ¶ 5.  Kickstarter is a platform and a resource.  *Id.*

Kickstarter is not involved in the development of the projects themselves.  *Id.*  Anyone based in

the United States or the United Kingdom can launch a project on Kickstarter as long as the

project meets Kickstarter's guidelines.  *Id.*

Project Creators set a funding goal and deadline.  *Id.*, ¶ 7.  Funding on Kickstarter

is all-or-nothing – projects must reach their funding goals to receive any money.  *Id.*  A project

must be at or over its funding goal at the project deadline or no money changes hands.  *Id.*

In exchange for their support, Backers can receive rewards that are set by the Project Creators. *Id.*, ¶ 6. Backers of an effort to make a book or film, for example, often get a copy of the finished work. *Id.* If a project is successfully funded, Kickstarter receives a 5% fee from the project's funding total. *Id.,* ¶ 8. Collection of a Backer's pledge is processed through a third-party payments processor. *Id.*

## C.   The Plaintiffs' Project

The Kickstarter platform and service is free to join, but is offered subject to registration and acceptance of all of the terms and conditions contained in Kickstarter's Terms of Use. *Id.*, ¶ 9. The Kickstarter Terms of Use in effect from October 2012 to date are attached as Exhibit 1 to Plaintiffs' Complaint. *Id.*, ¶ 10. The Terms of Use apply to every User of the Kickstarter service, including Project Creators. *Id. See also* Terms of Use [D.E. 1-3, p. 11], providing: "This Agreement sets forth the legally binding terms and conditions for your use of the website at www.kickstarter.com . . . .  By using the Service in any manner, including . . . contributing content, information, or other materials or services to the Site, you agree to be bound by this Agreement."

During the last quarter of 2012 and early January 2013, Plaintiffs set up a campaign on Kickstarter to raise funds for the publication of Naked Paddock. Complaint, ¶ 12. Plaintiffs "were required to register on the Kickstarter website and accept the Terms of Use." *Id.* Plaintiffs "accepted the Terms of Use" and "agreed to the Terms of Use." *Id.*, ¶¶ 23, 31.

Plaintiffs' project "was submitted to Kickstarter for review and approval. Kickstarter approved the project." *Id.*, ¶ 14. Plaintiffs scheduled the launch date for their fundraising campaign on the Kickstarter website for January 17, 2013. *Id.*, ¶ 15. On January 22, 2013, Kickstarter suspended the campaign. *Id.*, ¶ 17.

4818-1570-7412.3

Plaintiffs allege:  "The result is that Kickstarter has breached its contractual obligations to MK, Ducote and War Chest by suspending the Project from its website, has failed to allow MK, Ducote and War Chest to utilize the fundraising platform they registered for, and has deprived MK, Ducote and War Chest of the opportunity to raise funds to publish the novel Naked Paddock."  *Id.*, ¶ 19.  On this basis, Plaintiffs purport to "have suffered extensive delays in the publication of Naked Paddock, [] in excess of $1,000,000.00 of lost sales of the novel, and other consequential damages."  *Id.*, ¶ 20.

D.   **The Terms of Use**

By Plaintiffs' own admission, Kickstarter's Terms of Use (Complaint, Exhibit 1) govern Plaintiffs' claims.  Set forth below are the pertinent provisions of those Terms (italicized and underlined emphasis added):

> **Projects:  Fundraising and Commerce**:  "*Kickstarter reserves the right to reject, cancel, interrupt, remove, or suspend a campaign at any time and for any reason.  Kickstarter is not liable for any damages as a result of any of those actions.  Kickstarter's policy is not to comment on the reasons for any of those actions.  Project Creators should not take any action in reliance on having their project posted on the Site or having any of the money pledged until they have the ability to withdraw and spend the money. . . .  Kickstarter is not liable for any damages or loss incurred related to rewards or any other use of the Service. . . .*" [Terms of Use, D.E. 1-3, p. 14].

> **Termination**:  "*The Company may terminate your access to the Service, without cause or notice, which may result in the forfeiture and destruction of all information associated with your account. . . .*"  [*Id.*, p. 17].

> **Warranty Disclaimer**:  "*The Company does not guarantee that any Content will be made available through the Service. . .  The Company reserves the right to, at any time, for any reason, and without notice:  (i) cancel, reject, interrupt, remove, or suspend a campaign or project; (ii) remove, edit, or modify any Content, including, but not limited to, any User Submission; and (iii) remove or block any User or User Submission.  Kickstarter reserves the right not to comment on the reasons for any of these actions. . . .*"  [*Id.*, p. 18].

**Limitation of Liability**:  "*In no event shall the Company . . . be liable under contract, tort, strict liability, negligence, or any other legal or equitable theory with respect to the service (i) for any <u>lost profits</u>, data loss, cost of procurement of substitute goods or services, or special, indirect, incidental, punitive, or consequential damages of any kind whatsoever . . . or (iii) for any direct damages in excess of (in the aggregate) one hundred U.S. dollars ($100.00). . . .*"  [*Id.*, p. 19].

**Governing Law**:  "*These Terms of Service (and any further rules, policies, or guidelines incorporated by reference) <u>shall be governed by and construed in accordance with the laws of the State of New York</u> and the United States, without giving effect to any principles of conflicts of law. . . .  You agree that the Company and its Services are deemed a passive website that does not give rise to personal jurisdiction over Kickstarter or its parents, subsidiaries, affiliates, successors, assigns, employees, agents, directors, officers or shareholders, either specific or general, in any jurisdiction other than the State of New York.  You agree that any action at law or in equity arising out of or relating to these terms, or your use or non-use of the Services, <u>shall be filed only in the state or federal courts located in New York County in the State of New York</u>. . . .*"  [*Id.*].

III.      <u>**ARGUMENT**</u>

As set forth below, this Court should enforce the forum-selection clause in the Terms of Use and dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, transfer this action to the U.S. District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  Should this Court reach the merits of Plaintiffs' claims, dismissal is also appropriate pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs have failed to state a claim upon which relief can be granted, as a matter of law, in light of the Terms of Use.

A.      <u>**The Complaint Should Be Dismissed For Improper Venue.**</u>

Because the Terms of Use contain a mandatory New York venue selection clause, this matter should be dismissed for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998) ("[M]otions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought

pursuant to Fed.R.Civ.P. 12(b)(3) as motions to dismiss for improper venue.");[2] *see also Slater v. Energy Servs. Group Int'l*, 634 F.3d 1326, 1333 (11th Cir. 2011) ("Rule 12(b)(3) is the proper avenue for a party's request for dismissal based on a forum-selection clause."). *Accord Bowen v. YouTube, Inc.*, No. C08-5050FDB, 2008 U.S. Dist. LEXIS 122337,*5 (W.D. Wash. Apr. 15, 2008) (granting 12(b)(3) motion based on nearly identical Terms of Use provision on YouTube's website and denying the plaintiff's request for transfer because "dismissal is a proper remedy"); *Brodsky v. Match.com LLC*, No. 09 Civ. 5328 (NRB), 2009 U.S. Dist. LEXIS 101167, *5-7 (S.D.N.Y. Oct. 28, 2009) (enforcing similar provision in Match.com's terms of use agreement).

      The Eleventh Circuit and this Court in particular have a long history of enforcing mandatory forum-selection clauses like the one at issue here. *See, e.g.*, *Gonzalez v. Watermark Realty, Inc.*, No. 09-60265, 2010 U.S. Dist. LEXIS 31039, *2 (S.D. Fla. Mar. 30, 2010) (Moreno, J.) (granting dismissal for improper venue based on mandatory forum-selection clause in sales contract); *Slater*, 634 F.3d at 1329 (affirming Rule 12(b)(3) dismissal where forum-selection clause provided "all claims or causes of action relating to or arising from this Agreement shall be brought in a court in the City of Richmond, Virginia."); *Gillette Constr. Serv. Corp. v. Symons*, No. 11-CV-80147, 2011 U.S. Dist. LEXIS 32933, *2-3 (S.D. Fla. Mar. 29, 2011) (dismissing complaint where the forum-selection clause used the term "shall").

      This Circuit has held that such forum-selection clauses are "presumptively valid and enforceable unless the plaintiff makes a '***strong showing***' that enforcement would be unfair and unreasonable under the circumstances." *Rucker v. Oasis Legal Fin.*, 632 F.3d 1231, 1236

---

[2] Federal jurisdiction in this case is premised on diversity of citizenship.  As such, the *Erie* doctrine applies to determine whether state or federal law governs the enforcement of the forum-selection clause. *Erie v. Tompkins*, 304 U.S. 64 (1938).  Finding "no conflict between Florida and federal law regarding the validity of a forum-selection clause[,] . . . this circuit applies the test established in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972), when reviewing a forum-selection clause." *Kostelac v. Allianz Global Corporate & Specialty AG*, No. 12-13718, 2013 U.S. App. LEXIS 7685, *7-8 (11th Cir. Apr. 17, 2013).

(11th Cir. 2011) (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)) (emphasis added).  A forum-selection clause will therefore be enforced unless *the plaintiff* makes a "strong showing" that "(1) [its] formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provisions would contravene a strong public policy." *Lipcon*, 148 F.3d at 1292.  "[T]he exemption for fraud and overreaching does not apply to preclude the Court's enforcement of the forum selection clause" where, as here, any allegations of fraud are not "specific" to the forum-selection clause.  *Tradex Global Master Fund SPC Ltd  v. Palm Beach Capital Mgmt., LLC*, No. 09-21622, 2010 U.S. Dist. LEXIS 17703, *3 (S.D. Fla. Feb. 26, 2010) (Moreno, J.) (rejecting assertion that general finding of fraud is sufficient to invalidate a forum-selection clause).

Moreover, the fact that a forum-selection clause is contained in a website's terms of use is of no consequence to its enforceability.  Indeed, numerous courts, including courts in this Circuit, have enforced forum-selection clauses in website "clickwrap agreements."  *See, e.g.*, *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("In Florida and the federal circuits . . . clickwrap agreements are valid and enforceable contracts.") (citations omitted).  In *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. Jan. 24, 2012), the court addressed the enforceability of a forum-selection provision contained in Facebook.com's Terms of Service.  There, as here, the sign-up page for a Facebook account provided that, "[b]y clicking Sign-Up, you are indicating that you have read and agree to the Terms of Service," and, through a hyperlink, the user was sent to a different page, which included the forum-selection clause.  *Id.* at 835.  In enforcing the forum-selection provision, the court held that the clause was

"reasonably communicated" to the user, stating:  "[C]licking the hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket . . . Whether or not the consumer bothers to look is irrelevant."  *Id*. at 839; *cf. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591 (1991) (enforcing forum-selection clause in fine print on the back of a cruise ticket).

Here, Plaintiffs allege that they "accepted the Terms of Use published on Kickstarter's website" and "agreed to the terms of use on Kickstarter's website."  Complaint, ¶¶ 23, 31.  Those terms contain choice-of-law and forum-selection clauses which mandate New York as the exclusive venue.  Plaintiffs do not allege *any* facts – let alone facts sufficient to support a "strong showing" – that enforcement of these terms would be unfair or unreasonable.  *See Lipcon*, 148 F.3d at 1296 ("By requiring the plaintiff specifically to allege that the choice clause itself is unenforceable, courts may ensure that more general claims of fraud will be litigated in the chosen forum, in accordance with the contractual expectations of the parties.").

Accordingly, Kickstarter respectfully requests that this Court enforce the New York forum-selection clause and dismiss this action pursuant to Rule 12(b)(3).

### B.   Alternatively, This Action Should Be Transferred to the Southern District of New York Pursuant to 28 U.S.C. § 1404(a).

If this Court chooses not to dismiss Plaintiffs' action for lack of venue, it should transfer the action to the Southern District of New York under 28 U.S.C. § 1404(a).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Under this provision, two elements must be met:  (1) that the action "might have been brought" in the Southern District of New York; and (2) that transfer of the action will enhance the convenience of the parties and witnesses and is in the interest of justice, as

determined by "various factors."  *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002).  "[W]hen a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute."  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

> 1. This action "might have been brought" in New York.

The instant action undoubtedly "might have been brought" in the U.S. District Court for the Southern District of New York.  By the allegations of the Complaint, venue is proper in New York under 28 U.S.C. § 1391(b) because (i) Kickstarter resides in New York City, and (ii) a substantial part of the events or omissions giving rise to the alleged claim occurred there.  *See, e.g.,* Complaint, ¶¶ 10, 12, 14, 17-20.  Kickstarter also is subject to personal jurisdiction in the Southern District of New York because its principal place of business is located in New York City.  Cohen Declaration, ¶ 12.  Moreover, subject matter jurisdiction would continue exist on diversity grounds under 28 U.S.C. § 1332(a)(1).  *See* Notice of Removal [D.E. 1].  Thus, the first requirement for transfer under § 1404(a) is easily satisfied here.  *See Paula v. Vineyard Brands, Inc.*, No. 11-20524, 2011 U.S. Dist. LEXIS 110896, *3 (S.D. Fla. Sept. 28, 2011) (Moreno, J.) (finding the first § 1404(a) test was satisfied where venue, personal jurisdiction, and subject matter jurisdiction existed in the transferee court).

> 2. "Public and private factors" also favor transfer to New York.

The various "public and private factors" also weigh in favor transfer to New York because transfer would enhance the convenience of parties and witnesses and further the interest of justice.  *See Global Innovation Tech. Holdings, LLC v. Acer Am. Corp.*, 634 F. Supp.  2d 1346, 1348 (S.D. Fla. 2009) (Moreno, J.).  Chief among these factors is the forum-selection

clause, which "is a *significant* factor that figures *centrally* in the district court's calculus."  *P&S Business Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citations omitted) (emphasis in the original).  "Thus, while other factors might 'conceivably' militate against a transfer . . . the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors."  *Id*. at 807 (citing *Ricoh*, 870 F.2d at 573).

Additionally, "the convenience of the parties and witnesses, relative ease of access to sources of proof, the cost of obtaining attendance of the witnesses, and other practical factors" further support transfer to the Southern District of New York.  *See Hartley v. Clark*, 06-21434, 2009 U.S. Dist. LEXIS 119056, *3-4 (S.D. Fla. Nov. 9, 2009).

Here, Kickstarter's only office is located in New York City.  Cohen Declaration, ¶ 12.  All of Kickstarter's approximately 60 employees work there.  *Id.*, ¶ 13.  Multiple witnesses are located in New York City.  *Id.*, ¶ 14.  Kickstarter's paper files, its electronically stored information (other than information stored on remote third party servers), and all of its computer hardware are located in New York.  *Id.*, ¶ 15.  Kickstarter would incur significant time and expense, as well as disruption to its business, if this litigation were to proceed in Florida.  *Id.*, ¶ 16.  Yet, notwithstanding these factors and despite the express New York forum-selection clause, Plaintiffs chose to burden Kickstarter and this Court by filing suit in this district.  This Court should not countenance such action, and should transfer this litigation to the U.S.  District Court for the Southern District of New York.

### C.      The Complaint Fails To State a Claim for Relief.

In the event this Court reaches the merits of this case, it should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept the

well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). This tenet does not, however, apply to legal conclusions, which "must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). At a minimum, a plaintiff must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

    1. <u>New York law governs the claims at issue.</u>

   As an initial matter, New York law governs the substantive issues because the Terms of Use contain a New York choice of law provision, *see supra* p. 6, and all of Plaintiffs' claims are inextricably and factually tied to Plaintiffs' alleged acceptance of those terms.

   As the Eleventh Circuit acknowledged in *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009), a choice of law provision that relates only to the agreement will not ordinarily encompass tort claims, citing *Green Leaf Nursery v. E.I. Dupont DeNemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003). However, more broad provisions such as those that refer "to any and all claims or disputes arising out of" an agreement will cover such tort claims. *Id.* Moreover, where, as here, each of the claims clearly arises out of the Kickstarter Terms of Use, the choice of law provision in those terms should govern Plaintiffs' claims. *See Simpson v. FWM Laboratories, Inc.*, No. 09-61771, 2010 U.S. Dist. LEXIS 29973, *8 (S.D. Fla. March 29, 2010) (applying choice of law clause in terms of sale to claims based on false advertisements because the claims "clearly arise out of Plaintiff's purchasing of Defendant's products via an offer which purports to include these Terms and Conditions.").

-12-

Accordingly, New York law should apply to determine the merits of each of Plaintiffs' state law claims. Even if this Court were to find that Plaintiffs' tort and quasi-contract claims are not within the scope of the choice-of-law provision, the claims should still be dismissed under Florida law.[3]

2.   <u>Plaintiffs' breach of contract claim (Count I) is barred by the Terms of Use.</u>

Under New York law, courts dismiss breach of contract claims under Rule 12(b)(6) where, as here, the allegations are contradicted by an exhibit to the Complaint. S*ee, e.g., Jasper & Black, LLC v. Carolina Pad Co., LLC*, No. 10 Civ. 3562 (LTS)(HBP), 2012 U.S. Dist. LEXIS 16435, *11 (S.D.N.Y. Feb. 9, 2012) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."); *see also Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994) (dismissing action with prejudice where terms of agreement barred breach of contract claim).

In their breach of contract count, Plaintiffs allege that "Kickstarter breached its obligations under the Terms of Use . . . by suspending [their] Project from [Kickstarter's] website." Complaint, ¶ 25. However, Plaintiffs also expressly allege that they "accepted the Terms of Use." *Id.*, ¶ 23. Those terms, attached as Exhibit 1 to the Complaint, explicitly negate Plaintiffs' breach of contract claim. Specifically, the Terms of Use provide that Kickstarter had

---

[3] *See, e.g., Tradewinds Engine Servs., LLC v. IAE Int'l Aero Engines AG*, No. 10-61027, 2011 U.S. Dist. LEXIS 26411, *12 (S.D. Fla. Jan. 13, 2011) (dismissing fraudulent inducement claim where the plaintiff failed to allege facts indicating that any false statements were made with the purpose of inducing the plaintiff to take certain action); *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 U.S. Dist. LEXIS 108720, *24 (S.D. Fla. Sept. 23, 2011) (dismissing unjust enrichment claim where the plaintiff alleged that a valid contract existed between the parties, but did not allege that it lacked an adequate remedy at law).

-13-

the absolute right to take the action complained of.  The Terms of Use provide, among other things (italicized and underlined emphasis supplied):

- *Kickstarter reserves the right to reject, cancel, interrupt, remove, or suspend a campaign <u>at any time and for any reason</u>.*  [Terms of Use, D.E. 1-3, p. 14].

- *The Company reserves the right to, <u>at any time, for any reason, and without notice</u>:  (i) cancel, reject, interrupt, remove, or suspend a campaign or project; (ii) remove, edit, or modify any Content, including, but not limited to, any User Submission . . .*  [*Id.*, p. 18].

In addition, the Terms of Use provide that "Kickstarter is not liable for any damages or loss incurred related to rewards or any other use of the Service." *Id.*, p. 14.  Indeed, the "Limitation of Liability" section of the Terms of Use <u>expressly</u> exempts Kickstarter from liability "under contract, tort, strict liability, negligence, or any other legal or equitable theory with respect to the service (i) for any lost profits, data loss, cost of procurement of substitute goods or services, or special, indirect, incidental, punitive, or consequential damages ***of any kind whatsoever*** or (iii) for any direct damages in excess of (in the aggregate) one hundred U.S. dollars ($100.00) . . . ." *Id.*, p. 9 (emphasis added).

All of these terms render Plaintiffs' breach of contract claim non-actionable and legally deficient as a matter of law.  Because Plaintiffs cannot overcome these fatal deficiencies, Count I of the Complaint should be dismissed. *Cf., .e.g., Druyan v. Jagger*, 508 F. Supp. 2d 228, 237 (S.D.N.Y. 2007) (granting Fed. R. Civ. P. 12(b)(6) dismissal of a ticket purchaser's suit predicated on the cancellation of a rock concert where the website for purchasing a ticket manifested a user's assent to the terms of use, and those terms and the ticket provided that the concert was subject to the risk of cancellation).

-14-

3.      Plaintiffs' fraudulent inducement claim (Count II) fails to allege
any actionable misrepresentation or reasonable reliance.

In addition to negating Plaintiffs' breach of contract claim, the Terms of Use also

bar Plaintiffs' claim for fraudulent inducement.  The elements required to adequately plead a

cause of action for fraud in the inducement are: (a) a false representation of a material fact,

(b) made knowingly, (c) upon which the plaintiff justifiably relied, and (d) which caused injury.

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996).  To plead an actionable

claim of fraud in New York, a plaintiff must allege that the defendant made representations that

relate to "an existing fact rather than an expression of future expectations."  *Deutsche Bank Natl.*

*Trust Co. v Sinclair*, 68 A.D.3d 914, 916 (N.Y. App. Div. 2d Dep't 2009).  Disclaimers of

reliance on oral representations will prevent any reasonable reliance on those alleged

misrepresentations.  *Lucas v. Oxigene, Inc.*, No. 94 Civ. 1691 (MBM), 1995 U.S. Dist. LEXIS

12575, *10-12 (S.D.N.Y. Aug. 25, 1995) (operation of the parol evidence rule rendered the

alleged fraudulent statements inadmissible because the employee signed an agreement containing

a disclaimer and the agreement itself contradicted the alleged oral representations).

What is more, "[i]n New York, a plaintiff cannot transform a contract claim into a

fraud claim simply by alleging that the defendant entered the . . . agreement while intending not

to perform it."  *Fleming v. Hymes-Esposito*, 12 Civ. 1154 (JPO), 2013 U.S. Dist. LEXIS 45912,

*16 (S.D.N.Y. Mar. 29, 2013) (quoting *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,

667 F. Supp. 2d 308, 330 (S.D.N.Y. 2009)); *see also Bridgestone/Firestone, Inc. v. Recovery*

*Credit Services, Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996) ("[The] facts amount to little more than

intentionally-false statements by [the defendant] indicating his intent to perform under the

contract.  That is not sufficient to support a claim of fraud under New York law.").  Thus, where,

as here, the fraud seemingly "arises out of the same facts as plaintiff's breach of contract claim,

with the addition only of an allegation that defendant never intended to perform the precise

promises spelled out in the contract between the parties, the fraud claim is redundant and

plaintiff's sole remedy is for breach of contract." *Telecom Intern. America Ltd. v. AT&T Corp.*,

280 F.3d 175, 196 (2d Cir. 2001) (internal citations and quotations omitted).

        a.      *Plaintiffs fail to plead any misrepresentation of fact.*

Here, the only alleged statements underlying Plaintiffs' fraudulent inducement

claim arise out of the same facts as Plaintiffs' breach of contract claim.  To wit, Plaintiffs allege

that Kickstarter made the following "misrepresentations":  that Kickstarter "had the capability of

providing a platform for creative projects such as Naked Paddock to raise funds, that it was a

successful innovator in the field of crowd funding, that $500 million had been pledged to

campaigns utilizing its platform by more than 3 million people for over 35,000 projects, and that

a large percentage of projects had reached their funding goals by utilizing its platform."

Complaint, ¶ 28.  Plaintiffs then allege that these representations were "false," without

explaining why.  *See id.*, ¶ 29.  Plaintiffs add:  "Kickstarter knew that it was not capable of

performing its obligations set forth in the Terms of Use, and had no intention of permitting

plaintiffs to utilize its platform for its fundraising campaign consistent with the representations

made to Plaintiffs to secure the engagement."  *Id.*

None of these supposed "misrepresentations" are actionable.  At best, the first set

of statements constitutes inactionable expressions of future expectations and opinion based on

past performance, *see, e.g., Deutsche Bank*, 68 A.D.3d at 916, or statements of fact (e.g., that

$500 million had been pledged to campaigns), which Plaintiffs do not allege with particularity to

be false.  *See GEM*, 667 F. Supp. 2d at 332 ("In order to satisfy Rule 9(b), the plaintiff must:

-16-

'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'") (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).

Similarly, the second set of statements – that Kickstarter did not intend to perform its alleged contractual obligations – are redundant of Plaintiffs' breach of contract claim, and are therefore likewise inactionable.  *See Telecom Intern. America,* 280 F.3d at 196 (fraudulent inducement claim fails where "it is simply a breach of contract claim in the tort clothing of (factually unsupported) allegations of an intent to breach").

b.      *There is no justifiable reliance as a matter of law.*

Equally fatal is Plaintiffs' failure to plausibly allege that any purported statements by Kickstarter were intended to induce reliance, or that any reliance by Plaintiffs was justifiable. Instead, Plaintiffs merely allege, in conclusory fashion and without any supporting evidence, that Kickstarter made "material misrepresentations with the intent that Plaintiffs would rely on them," and that Plaintiffs "agreed to the Terms of Use" "[i]n reasonable reliance upon the misrepresentations."  Complaint ¶¶ 30, 31.

These allegations are inactionable in light of the Terms of Use, which specifically disclaim any such intent or reliance.  *See Deutsche Bank,* 68 A.D.3d at 915 ("If the documentary proof disproves an essential allegation of the complaint, dismissal [] is warranted even if the allegations, standing alone, could withstand a motion to dismiss.").

The Terms of Use contain the following specific statements and disclaimers barring Plaintiffs' claim for fraudulent inducement (italicized and underlined emphasis added):

- *Project Creators <u>should not take any action in reliance</u> on having their project posted on the Site or having any of the money pledged until they*

*have the ability to withdraw and spend the money.* [Terms of Use, D.E. 1-3, p. 14].

- *The Company <u>does not guarantee</u> that any Content will be made available through the Service.* [*Id.*, p. 18].

- *These Terms of Use and other referenced material are the <u>entire agreement</u> between you and the Company with respect to the Service, and supersede all prior or contemporaneous communications and proposals (whether oral, written or electronic) between you and the Company . . . .* [*Id.*, p. 20].

Under New York law, if "a party to a contract specifically disclaims reliance upon a representation in a contract, that party cannot . . . [later] assert that it was fraudulently induced into signing the contract by the very representation it has disclaimed." *Grumman Allied Indus. v. Rohr Indus.,* 748 F.2d 729, 734 (2d Cir. 1984) (citing *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959)). This principle holds true even where the disclaimer does not explicitly mention the contested issue. *Citibank v. Plapinger,* 66 N.Y.2d 90, 94-95 (1985); *see also Harsco Corp. v. Segui,* 91 F.3d 337, 346 (2d Cir. 1996) (dismissing fraudulent inducement claim although disclaimer did not specifically disclaim specific purported statements). Based on the disclaimers in the Terms of Use, Plaintiffs' Complaint plainly fails to allege justifiable reliance.

Accordingly, Plaintiffs' claim for fraudulent inducement should be dismissed.

4.   <u>Plaintiffs' claim for unjust enrichment (Count III) fails to state a claim upon which relief can be granted.</u>

Finally, notwithstanding the Terms of Use, Plaintiffs seek to assert an equitable claim for unjust enrichment in Count III of the Complaint. To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Old Republic Natl. Title Ins. Co. v Luft*, 52 A.D.3d 491, 491-92 (N.Y. App. Div. 2d Dep't 2008).

-18-

Here, Plaintiffs allege that Kickstarter was unjustly enriched by obtaining the benefit of Plaintiffs' "paying and/or agreeing to pay for services not provided," and by Plaintiffs allegedly engaging in "Twitter 'tweets' and emails, [in which] well over 100,000 people were contacted [by Plaintiffs] and requested to log on to Kickstarter to view the [Naked Paddock] campaign." *See* Complaint, ¶¶ 37, 40.

c.    *Plaintiffs cannot maintain an unjust enrichment claim against Kickstarter because of the Terms of Use.*

It is settled law that a claim for unjust enrichment is one lying in quasi-contract, and thus cannot be maintained where a contractual relationship between the parties exists. *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (dismissing unjust enrichment claim on account of contractual relationship between parties). Because Plaintiffs allege that they "accepted" and "agreed to" the Terms of Use, Complaint, ¶¶ 23, 31, they <u>cannot</u> state a claim for unjust enrichment against Kickstarter.

d.    *Plaintiffs fail to allege facts suggesting that it would be "inequitable" for Kickstarter to retain any purported enrichment.*

Plaintiffs have further failed to state a plausible unjust enrichment claim because they do not allege facts suggesting that it would be "inequitable" for Kickstarter to retain any purported enrichment. Plaintiffs have failed to allege, as a matter of law, any wrongdoing, misrepresentation or misleading act by Kickstarter. *See* discussion *supra*, Sections C.2, C.3.

More fundamentally, any suggestion that Kickstarter received "payments" from Plaintiffs, *see* Complaint, ¶¶ 38-39, is belied and negated by Plaintiffs' own allegations. As discussed above, and as Plaintiffs concede, Plaintiffs only "were required to pay Kickstarter a fee in the amount of 5% of the total funds raised." *Id.*, ¶ 12. Because the Naked Paddock campaign

was suspended, "no one invested in the Project." *Id.*, ¶ 18.  As such, Plaintiffs made no

payments to Kickstarter, and no specific payments are alleged in the Complaint.

On these facts, this Court should dismiss Count III as a matter of law.  *Cf.*

*Whitman Realty Group, Inc. v. Galano*, 41 A.D.3d 590, 592-93 (N.Y. App. Div. 2d Dep't 2007)

(holding that an unjust enrichment claim fails as a matter of law where there is a valid contract

that governs the parties' relationship and there "was no evidence of a promise, express or

implied, that the defendant was to pay the plaintiff for services performed").

IV.     <b><u>CONCLUSION</u></b>

For the foregoing reasons, Kickstarter respectfully requests that the Court dismiss

Plaintiffs' Complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).  In the alternative,

Kickstarter requests that the Court transfer this action to the United States District Court for the

Southern District of New York pursuant to 28 U.S.C. § 1404(a).

If the Court reaches the merits of Plaintiffs' claims, Kickstarter requests that the

Court dismiss the Complaint, with prejudice, for failure to state a claim pursuant to Fed. R. Civ.

P. 12(b)(6).

Finally, because the Terms of Use provide that "[i]n any action or proceeding to

enforce rights under the Terms of Use, the prevailing party will be entitled to recover costs and

attorneys' fees" [D.E. 1-3, p. 20], if the Court dismisses this action, Kickstarter requests that the

Court retain jurisdiction over this matter for the sole purpose of awarding fees and costs to

Kickstarter.

Dated:  June 6, 2013                           Respectfully submitted,


                                               **s/ Natalia M. Salas**
                                               Richard S. Davis
                                               Florida Bar No. 991082
                                               E-mail:  rdavis@foley.com
                                               Natalia M. Salas
                                               Florida Bar No. 44895
                                               E-mail:  nsalas@foley.com
                                               FOLEY & LARDNER LLP
                                               One Biscayne Tower
                                               2 South Biscayne Boulevard
                                               Suite 1900
                                               Miami, Florida  33131
                                               Telephone:     (305) 482-8415
                                               Facsimile:     (305) 482-8600

                                               *Attorneys for defendant Kickstarter, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served, by

CM/ECF, on June 6, 2013 on all counsel or parties of record on the attached Service List.

<u>s/ Natalia M. Salas</u>
Natalia M. Salas
Florida Bar No. 44895
E-mail:  nsalas@foley.com
FOLEY & LARDNER LLP
One Biscayne Tower
2 South Biscayne Boulevard
Suite 1900
Miami, Florida  33131
Telephone:     (305) 482-8415
Facsimile:      (305) 482-8600

4818-1570-7412.3

<u>**SERVICE LIST**</u>
**Ducote v. Kickstarter, Inc.**
**Case No. 13-21758-CIV-MORENO**
**United States District Court, Southern District of Florida**


Harold E. Patricoff, Jr.
hpatricoff@shutts-law.com
Manuel S. Hiraldo
mhiraldo@shutts.com
Shutts & Bowen LLP
201 S. Biscayne Boulevard
Suite 1500
Miami, Florida  33131
Telephone:      (305) 358-6300
Facsimile:      (305) 381-9982

*Attorneys for plaintiffs Kristin "M.K."*
*Ducote, Chapman Ducote and War Chest*
*Publishing, LLC*

4818-1570-7412.3